AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

_____ FILED _____ LODGED
_____ RECEIVED

**Apr 27, 2020**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No.  MJ20-5093
)
INFORMATION ASSOCIATED WITH ONE )
FACEBOOK ACCOUNT )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B-1, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1073 | Unlawful Flight to Avoid Prosecution |

The application is based on these facts:

See Affidavit of FBI Special Agent Terrance G. Postma, attached hereto and incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Terrance G. Postma_
*Applicant's signature*

Terrance G. Postma, Special Agent
*Printed name and title*

Sworn to before me and signed by electronic means, reliable under Fed. R. Crim. Pro. 41(d).

Date:     04/27/2020

_J. Richard Creatura_
*Judge's signature*

City and state:  Tacoma, Washington

Hon. J. Richard Creatura, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

STATE OF WASHINGTON          )

                             )          ss

COUNTY OF PIERCE             )

I, Terrance G. Postma, being first duly sworn, hereby depose and state as follows:

### BACKGROUND

1.      I have been employed as a Special Agent of the FBI since June 2002 and am currently assigned to the Seattle Division's Tacoma Resident Agency.  I am responsible for investigations of violent crime, fugitives, and bank robbery.  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to search the information described in Attachment A for the purpose of locating and apprehending Santiago Mederos who has a federal arrest warrant issued in the Western District of Washington for a charge of Unlawful Flight to Avoid Prosecution, Title 18, United States Code, Sections 1073 (MJ16-5179) arising from his flight from the Western District of Washington to avoid charges of murder, as described below.  There is also probable cause to search the information described in Attachment A for evidence in the fugitive investigation, as described in Attachment B-1.

### PURPOSE OF AFFIDAVIT

4.      I make this affidavit in support of an application for a search warrant for information associated with the following telephone number(s) ("Subject Account(s)"):

(1)      +52-7291359059/+52-17291359059 (Subject Account 1), an unknown subscriber believed to be Claudia Perez.

5.      All of the requested information is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with Subject Account(s).  The affidavit also supports a tracker warrant for the same accounts listed in Attachment A.

**PRIOR APPLICATION**

6.      This is the first request for the Subject Account(s).

**SUMMARY OF PROBABLE CAUSE**

7.      In 2010, Santiago Mederos fled from Tacoma to Mexico after the murder of Camille Love and Jose Lucas.  Santiago Mederos has outstanding warrants for the respective murders, and this Court has charged him for violation of Unlawful Flight to Avoid Prosecution, Title 18, United States Code, Sections 1073 on September 30, 2016 under Case No. MJ16-5179.

8.      As described below, investigation by law enforcement has led to a Mexican phone number that is associated with a WhatsApp account that posted a picture of Santiago Mederos.  That number is also associated with a Facebook account, Facebook user ID 100040501718452.  Based on prior search warrant returns, law enforcement are aware that Santiago Mederos has used his Facebook accounts to communicate with Claudia Perez with whom he is in a romantic relationship.  Law enforcement has also identified a phone number belonging to Claudia Perez and associated with a Facebook account (Subject Account 1).

AFFIDAVIT OF TERRANCE POSTMA – 2
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**STATEMENT OF PROBABLE CAUSE**

**A. SANTIAGO MEDEROS AND THE LOVE AND LUCAS MURDERS**

9.      On February 7, 2010, Tacoma Police Department (TPD) officers responded to the 5900 block of Portland Avenue regarding a shooting.  At the scene, TPD officers and detectives discovered that Camile Love was the shooting victim.  Love died from the injuries sustained in the shooting.  Based on interviews of witnesses and informants who admitted to participation in the shooting, the TPD detectives concluded that Santiago Mederos was the prime suspect in Love's murder and that the shooting was a result of a gang turf war.

10.      On March 25, 2010, a homicide occurred within the city of Tacoma.  TPD detectives identified the homicide victim as Jose Saul Lucas and identified the prime suspect in his murder as Santiago Mederos.  Based on interviews of two witnesses, TPD detectives concluded that Santiago Mederos, a known member of the Eastside Lokotes Sureños (ELS) gang, and four other ELS gang members went to the residence of a rival gang member, Reynaldo Orozco, to collect money.  When they could not find the rival gang member, they broke into and damaged Orozco's car, which was parked at the residence.  When three individuals, who lived with Orozco, realized that the ELS gang members were vandalizing Orozco's vehicle, they confronted the gang members and a fight ensued.  While attempting to flee the scene, Santiago Mederos and his accomplices fired a single gunshot, which struck and killed one of Orozco's roommates, Jose Saul Lucas.

11.      As a result of their initial investigation, TPD detectives obtained an arrest warrant for Santiago Mederos for his involvement in the homicide.  Further investigation, to include interviews with witnesses, friends and family members, revealed that Santiago Mederos is aware that he has a warrant for his arrest and has subsequently gone into hiding.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    12.    Ashley Rios, a friend of Santiago Mederos, stated in an interview with

2    TPD detectives that she travelled to Mexico with Santiago Mederos to his Aunt's

3    residence in Guerrero, Mexico, shortly after the Lucas murder.

4    13.    Efforts to date to locate Santiago Mederos in Mexico have been

5    unsuccessful.

6    **B.  SUBJECT ACCOUNT(S)**

7    14.    In the course of this investigation, law enforcement has reviewed

8    telephone records of members of the Mederos family and records of telephone numbers

9    that are in communication with members of the Mederos family.  In the course of

10   reviewing those records, law enforcement identified a number, +52-7341170819.

11   According to call records, the number ending in 0819 is in communication with

12   individuals who are close to the Mederos family.

13   15.    An online search of publicly available information indicate that the user

14   of the number ending in 0819 has a WhatsApp account under the same telephone

15   number.  The WhatsApp account included a public profile picture of an individual who

16   resembles Santiago Mederos and an unknown adult female and an unknown juvenile

17   female.  Law enforcement has reviewed the WhatsApp profile picture associated with the

18   number ending in 0819 and observed that the male individual in the WhatsApp profile

19   picture has a tattoo on the right side of his neck and on his right shoulder.  These tattoos

20   and the appearance of the individual's face match a photograph of Santiago Mederos that

21   law enforcement obtained from a prior Facebook search warrant return in this

22   investigation.

23   16.    Based on review of records returned to investigators by Facebook, Inc.

24   pursuant to a prior order of this Court, the user of the number ending in 0819 also has a

25   Facebook account registered under the same number ending in 0819, Facebook account

26   100040501718452.  Facebook account 100040501718452 is registered under the

27   username "Antono Mendoza," and prior search warrant returns indicate that variations of

28   the name "Antonio," like "Antono," are common aliases for Santiago Mederos.

17.     Based on review of records returned to investigators by Facebook, Inc. pursuant to a search warrant issued by this court, the username of Facebook account 100036795438133 is "Antony Villa."  Facebook records returned to investigators pursuant to search warrants issued by this Court revealed that the username for two other Facebook accounts known to have been previously used by Santiago Mederos are "Anthony Villa" and "Antonio Villa," which is based on Mederos's other family name, Villalba.

18.     Based on review of records returned to investigators by Facebook, Inc. pursuant to search warrants issued by this court, Facebook account 100040501718452 and Facebook account 100036795438133 are linked by machine cookie, which means that two particular accounts have been accessed by the same individual machine (e.g., two Facebook accounts that have been accessed on the same phone).  Such a "link" between two accounts indicates that the users are the same person or in close proximity to each other.

19.     As described in more detail below, search warrant returns show that the Facebook account belonging to Santiago Mederos, under the alias "Antony Villa," sent romantic messages to accounts registered to Claudia Perez.  The communication indicates that Mederos is in regular communication with Perez.  Subject Account 1 is associated with an email addresses of Perez.

20.     Based on review of records returned to investigators by Facebook, Inc. pursuant to a search warrant issued by this Court, the user of the Facebook account with the user name "Antony Villa" sent a message to Facebook account 100045392260014 registered with the username "Claudia Perez" on January 27, 2020.  The message when roughly translated says "Rest and sweet dreams, my love.  I confess that I'm crazy in love with you but I recognize that it makes no sense if you don't feel the same.  I love you, baby.  See you tomorrow."

21.     The user of the Facebook account with the username "Antony Villa" also sent a message to the Facebook account with the username "Claudia Perez" on January

AFFIDAVIT OF TERRANCE POSTMA – 5
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

30, 2020.  The message when roughly translated says "Hello my love.  God willing, everything will be fine, my queen.  Cheer up, baby.  I love you all, for real.  I want to apologize to you from the bottom of my heart for how I am with you.  I know we barely talk anymore.  As you will say, it's not possible because they are just looking after [us].  Never doubt that I love you and our four babies.  You are my whole world.  I love you, you are the most beautiful and perfect thing that God has given me."

22.     Based on review of records returned to investigators by Facebook, Inc. pursuant to a search warrant issued by this Court, the same picture posted on December 30, 2019, as a profile picture to the Facebook account with the username "Claudia Perez" was posted as a profile picture to Facebook account 100035321705105, also registered with the username "Claudia Perez," on April 17, 2019.  Another picture posted on February 2, 2020, as a profile picture to the Facebook account with the username "Claudia Perez" ending in 0014 is posted as a profile picture to the Facebook account with the username "Claudia Perez" ending in 5105 on April 16, 2019.

23.     Review of Facebook, Inc. records returned to investigators pursuant to a search warrant issued by this Court indicate that email account cp135054@gmail.com is a registered email address associated with the Facebook account with the username "Claudia Perez" ending in 0014.  As I know from training and experience, "registering" an email address requires confirmation by the account holder.

24.     Review of records returned by Google, Inc. to investigators pursuant to a search warrant issued by this Court reveal that the phone number associated with Subject Account 1 is the Sign-in, User, and Reachable Phone Number for a Google, Inc. account that uses the email account cp135054@gmail.com.  As described above, such a connection means that the user of the email account, believed to be Claudia Perez, is also the user of the phone numbers associated with Subject Account 1.

25.     On April 22, 2020, I accessed the Make a Preservation Request portion of Facebook's Law Enforcement Online Requests portal to verify that Facebook, Inc. has information related to Subject Account 1.  I entered Subject Account 1 in the Accounts

AFFIDAVIT OF TERRANCE POSTMA – 6
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   field and the system accepted the request.  Based on my training and experience, I am

2   aware that if Facebook, Inc. does not have any account information related to the number

3   entered in the Accounts field the system will respond with a message that states "No

4   Account Found" meaning Facebook, Inc. does not have any information related to the

5   account entered.

6   **C. FACEBOOK INFORMATION STORAGE**

7       26.     I am aware from my experience and training, and consultation with other

8   investigators, of the following information about Facebook:

9       27.     Facebook owns and operates a free-access social networking website of

10  the same name that can be accessed at http://www.facebook.com.  Facebook allows its

11  users to establish accounts with Facebook, and users can then use their accounts to share

12  written news, photographs, videos, and other information with other Facebook users, and

13  sometimes with the public.

14      28.     Facebook asks users to provide basic contact and personal identifying

15  information to Facebook, either during the registration process or thereafter.  This

16  information may include the user's full name, birth date, gender, contact e-mail

17  addresses, Facebook passwords, Facebook security questions and answers (for password

18  retrieval), physical address (including city, state, and zip code), telephone numbers,

19  screen names, websites, and other personal identifiers.  Facebook also assigns a user

20  identification number to each account.

21      29.     I know from speaking with other law enforcement that "cookies" are

22  small files placed by a server (such as those used by Facebook) on a device to track the

23  user and potentially verify a user's authentication status across multiple sites or

24  webpages.  This cookie could be unique to a particular account (e.g., the Facebook

25  account) or to a given device (e.g., the particular phone used to access the Facebook

26  account). The next time a user visits a particular site or server, the server will ask for

27  certain cookies to see if the server has interacted with that user before.  Cookies can also

28  be used to determine "machine cookie overlap," or multiple accounts that have been

AFFIDAVIT OF TERRANCE POSTMA – 7
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

accessed by the same individual machine (e.g., two Facebook accounts that have been accessed on the same phone).  The machine cookie overlap thus allows Facebook to track accounts that are "linked" to each other because the same user account (username on a computer) on the same device accessed multiple Facebook accounts.  This can identify either multiple Facebook accounts used by the same person or used by different people sharing the same user account and device.  In either case, the machine cookie overlap means that the users of the linked accounts are the same person or two people in close proximity to each other.

30.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

31.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

32.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and

AFFIDAVIT OF TERRANCE POSTMA – 8
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

33.     Facebook allows users to upload photos and videos.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

34.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

35.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

36.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

37.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

38.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

39.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

40.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

41.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

42.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

AFFIDAVIT OF TERRANCE POSTMA – 10
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

43.     Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

44.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

45.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

46.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues

AFFIDAVIT OF TERRANCE POSTMA – 11
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  relating to their accounts, such as technical problems, billing inquiries, or complaints

2  from other users.  Social networking providers like Facebook typically retain records

3  about such communications, including records of contacts between the user and the

4  provider's support services, as well as records of any actions taken by the provider or

5  user as a result of the communications.

6        47.      Therefore, the computers of Facebook are likely to contain all the material

7  described above, including stored electronic communications and information concerning

8  subscribers and their use of Facebook, such as account access information, transaction

9  information, and other account information.  I believe such information is likely to help

10  me locate the fugitive described in this affidavit.

11        **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

12        48.      I anticipate executing this warrant under the Electronic Communications

13  Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by

14  using the warrant to require Facebook to disclose to the government copies of the records

15  and other information (including the content of communications) particularly described in

16  Section I of Attachment B-1.  Upon receipt of the information described in Section I of

17  Attachment B-1, government-authorized persons will review that information to locate

18  the items described in Section II of Attachment B-1.  Pursuant to a tracker warrant. based

19  on the same statutory authority, I will also seize any location information as described in

20  Attachment B-2.

21        49.      As indicated in the Motion for Nondisclosure and Motion to Seal that

22  accompany this affidavit, the government requests, pursuant to the preclusion of notice

23  provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not

24  to notify any person (including the subscriber or customer to which the materials relate)

25  of the existence of this warrant for such period as the Court deems appropriate.  The

26  government submits that such an order is justified because notification of the existence of

27  this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would

28

AFFIDAVIT OF TERRANCE POSTMA – 12
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 │ give the subscriber an opportunity to destroy evidence, change patterns of behavior,
2 │ notify confederates, or flee or continue his flight from prosecution.

3 │       50.       It is further respectfully requested that this Court issue an order sealing all
4 │ papers submitted in support of this application, including the application and search
5 │ warrant and tracker warrant until such dates as provided in the proposed Order.  I believe
6 │ that sealing this document is necessary because the items and information to be seized are
7 │ relevant to an ongoing investigation.  Premature disclosure of the contents of this
8 │ affidavit and related documents may have a significant and negative impact on the
9 │ continuing investigation and may severely jeopardize its effectiveness.
10 │ //
11 │ //
12 │ //

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**CONCLUSION**

51.     Based on the forgoing, I request that the Court issue the proposed search warrant and tracker warrant.  This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of these warrants.  Accordingly, by this Affidavit and Search Warrant, I seek authority for the government to search all of the items specified in Section I, Attachment B-1 (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to that same Attachment and, pursuant to the Tracker Warrant, all location information as described in Attachment B-2.

Terrance G. Postma
Terrance G. Postma
Special Agent
Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on this 27th day of April, 2020.

HON. J. RICHARD CREATURA
United States Magistrate Judge

AFFIDAVIT OF TERRANCE POSTMA – 14
USAO #2016R01184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following accounts, each identified by Facebook user ID ("Subject Account(s)"):

(1)      Telephone number +52-7291359059/+52-17291359059 (Subject Account 1).

for all such information that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

ATTACHMENT A
PROPERTY TO BE SEARCHED                   – 1 –
USAO #2016R01184

**ATTACHMENT B-1**

**Particular Things to be Seized**

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

A. The following information about the customers or subscribers of the Subject Accounts:

(a)     User Neoprint - all user contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers associated with the current profile information, and all wall postings and messages to and from the user.

(b)     All activity logs for the Subject Accounts and all other documents showing the user's posts and other Facebook activities;

(c)     User photoprint and videos - all photos and videos uploaded, "liked", or tagged by the user, along with all photos uploaded by any user which have the user tagged in them, any associated photos or links to photos in their original format, including all original meta-data or "EXIF" information;

(d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend and family lists, including the friend and family Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, calling history, and pending "Friend" requests;

(f)    All "check ins" and other location information;

(g)    I.P. Logs - all IP logs showing log-in and log-off and intraconnection I.P. activity including I.P. addresses and date/time stamps for account accesses as well as account creation I.P. address, date, and time.  Provide source port information for each I.P. log-in and log-off event for the Subject Accounts;

(h)    All records of the Subject Accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)    All information about the Facebook pages that each Subject Account is or was a "fan" of;

(j)    User Friends List/Information – provide a full list of all past and present friends for the Subject Accounts, including all messages and postings between accounts and listed friends;

(k)    All records of Facebook searches performed by the Subject Accounts;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)    The types of service utilized by the user;

(n)    The length of service (including start date);

ATTACHMENT B-1
PROPERTY TO BE SEIZED                              – 2 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

| | | |
|---|---|---|
| 1 | (o) | The means and source of payment for such service (including any credit |
| 2 | | card or bank account number) and billing records; |
| 3 | (p) | All privacy settings and other account settings, including privacy settings |
| 4 | | for individual Facebook posts and activities, and all records showing which |
| 5 | | Facebook users have been blocked by the Subject Accounts; |
| 6 | (q) | All records pertaining to communications between Facebook and any |
| 7 | | person regarding the user or the user's Facebook account, including |
| 8 | | contacts with support services and records of actions taken; |
| 9 | (r) | Names (including subscriber names, Facebook user IDs, and screen |
| 10 | | names); |
| 11 | (s) | Addresses (including mailing addresses, residential addresses, business |
| 12 | | addresses, and e-mail addresses); |
| 13 | (t) | Local and long distance telephone connection records; |
| 14 | (u) | Push Tokens - any unique identifiers that would assist in identifying the |
| 15 | | device(s) associated with the Subject Accounts, including push notification |
| 16 | | tokens associated with the Subject Accounts (including Apple Push |
| 17 | | Notification (APN), Google Cloud Messaging (GCM), Microsoft Push |
| 18 | | Notification Service (MPNS), Windows Push Notification Service (WNS), |
| 19 | | Amazon Device Messaging (ADM), and Baidu Cloud Push, phone |
| 20 | | numbers, IMEI/ESN, serial numbers, instrument numbers), MAC |
| 21 | | addresses, IP addresses, email addresses, and subscriber information; |
| 22 | (v) | Records of session times and durations, and the temporarily assigned |
| 23 | | network addresses (such as Internet Protocol ("IP" addresses) associated |
| 24 | | with those sessions along with time, type, machine (including MAC |
| 25 | | addresses) cookie, city, region, country, device, and browser; |
| 26 | (w) | Facial recognition data; |
| 27 | (x) | Linked accounts; |
| 28 | (y) | Family members associated with the user of each Subject Account; |

ATTACHMENT B-1
PROPERTY TO BE SEIZED                      – 3 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(z)     Work of the user of each Subject Account;

(aa)    Telephone or instrument numbers or identities (including MAC addresses);

(bb)    Other subscriber numbers or identities (including temporarily assigned network addresses and registration IP addresses);

(cc)    User Contact Information – all user contact information input by the user including name, birthdate, contact email address(es), other related email addresses, address, city, state, zip code, all phone numbers, screen name(s), and website information, to include basic subscriber information and expanded subscriber information;

(dd)    Group Contact Information – a list of the user's currently registered groups;

(ee)    Location Information – all information pertaining to location data for the Subject Accounts, including but not limited to geo-location data and all other geo-tagging or geo-location related information;

(ff)    Device Information – all information pertaining to devices used to upload photos, posts, messages, or updates, including but not limited to Apple UDID, mobile phone number, mobile device ID numbers, and all other information related to the devices;

(gg)    Poke Information – all information pertaining to "pokes" initiated by or received by the Subject Accounts;

(hh)    Private Messages – all information pertaining to any and all private messages to include content, call logs, and location information for the Subject Accounts;

(ii)    Facebook Messenger – all information pertaining to any and all incoming and outgoing Facebook messenger text strings and conversations for the Subject Accounts; and

(jj)    All other account information including: any "about you" information, ads, apps and websites, calls and messages, comments, events, following and followers, friends, groups, likes and reactions, location history,

marketplace, messages, other activity, pages, payment history, photos and videos, posts, profile information, saved items, search history, security and login information, and "your places" information.

B.  All records and other information (not including the contents of communications) relating to the Subject Accounts, including:

    (a)    Records of user activity for each connection activity for each connection made to or from the Subject Accounts, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination of Internet Protocol addresses;

    (b)    Information about each communication sent or received by the Subject Accounts, including the date and time of the communication, the method of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

    (c)    Records of any Facebook accounts that are linked to the Subject Accounts by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine or device as each Subject Account).

## II.   Information to be seized by the government

All information described above in Section I that relates to the ongoing fugitive investigation involving Santiago Mederos, including, for each user ID identified on Attachment A, information pertaining to the following matters:

    (a) Any content including e-mails, messages, texts, photographs (including metadata), videos (including metadata), visual images, documents, spreadsheets, address lists, contact lists or communications of any type which could be used to identify the user and or their location.

    (b) Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

ATTACHMENT B-1
PROPERTY TO BE SEIZED
USAO #2016R01184

– 5 –

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(c) All subscriber records associated with the Subject Accounts, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service including any credit card or bank account number.

(d) Any and all other log records, including IP address captures, associated with the Subject Accounts;

Any records of communications between Facebook and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about any of the Subject Accounts. This is to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

ATTACHMENT B-1
PROPERTY TO BE SEIZED                    – 6 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

## **ATTACHMENT B-2**

### **Information to be disclosed by Facebook, Inc. (the "Provider")**

3        To the extent that the information described in Attachment A is within the

4    possession, custody, or control of Facebook, Facebook is required to disclose the

5    following information to the government for each User ID listed in Attachment A:

6        (a)     All location data collected by Facebook for the account, including GPS data

7    and any other physical location information collected by Facebook's location services via

8    the user's mobile phone or other device, on a real-time or near-real time basis.  Facebook

9    is required to provide any such data they collect, regardless of the time of day.

10  **II.    Information to be seized by the government**

11       (a)     All data disclosed by Facebook pursuant to this attachment.  This data shall

12   be made accessible by the provider to the Federal Bureau of Investigations 24/7, day or

13   night, and/or emailed to Special Agent Terrance G. Postma at **tgpostma@fbi.gov**.

14  **III.   Time for production by provider**

15       The provider shall begin producing the information required by this attachment

16   within seven (7) days of the date of service of the warrant.

17  **IV.    Duration of production**

18       The provider shall produce the information required by this attachment for a

19   period of for forty-five (45) days from the date of issuance of this warrant.

20

21

22

23

24

25

26

27

28

ATTACHMENT B-2
PROPERTY TO BE SEIZED                    – 1 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by Facebook, and my official title is _____.  I am a custodian of records for Facebook.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____

Date                                                        Signature

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800